133 F.3d 928
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Freddie L. McLAURIN, Jr., Plaintiff-Appellant,
v.
Alan CLARKE, Fred A. Dawkins, Claude J. Farinha, Penny
Kastanis, David K. Marty, Bruce Pomer, Albert S. Rodda,
Individually and as members of the Board of Trustees, of Los
Rios School District; Queen F. Randall, Individually and as
President of American River College; Van Groningen,
Individually and as interim Chancellor of Los Rios School
District; Richard C. Beymer, Individually and as Assistant
Chancellor of Los Rios School District; Mary T. JONES,
Individually and as Director of Personnel of Los Rios School
District, Los Rios Community College District, Defendants-Appellees.
 No. 96-16823.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Oct. 9, 1997.
Decided Dec. 17, 1997.
 
 Before: SNEED, SCHROEDER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Freddie L. McLaurin, Jr. ("McLaurin") appeals the district court's grant of summary judgment in favor of Los Rios Community College District and other named defendants ("the District")[1] in McLaurin's suit under 42 U.S.C. § 1983 for alleged liberty and property deprivation. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 3
 The Los Rios Community College District hired McLaurin, an African-American male, to serve as mathematics dean for American River College ("ARC") for the period beginning July 1, 1992, and ending June 30, 1993. ARC had previously employed McLaurin as a tenured mathematics instructor and interim dean. Although McLaurin's contract gave him "administrator" status, he retained his status as a tenured mathematics instructor.[2]
 
 
 4
 On August 20-21, 1992, sexual harassment charges were filed against McLaurin by Angela Orozco, a secretary in the mathematics department, and by Donna Smith, an mathematics instructor. A third woman, Sharon Rigley, made sexual harassment complaints against McLaurin but did not file charges. Prior to filing the charges, the women reported their complaints to President Randall. President Randall immediately conducted telephone interviews with those witnesses mentioned by the complainants. President Randall also met with McLaurin, discussed the allegations, but refused to disclose the complainants' identities. According to an August 28, 1992, memorandum written by President Randall to affirmative action coordinator Mary Jones, McLaurin "admitted" the allegations but stated that Randall "had to understand the context."
 
 
 5
 On September 14-15, the complainants requested that the District proceed with the formal sexual harassment procedures. McLaurin met with Ms. Jones and Professor Randall. He was provided a synopsis of the sexual harassment charges, a copy of the Board policy against sexual harassment, and explained the pertinent timelines. McLaurin was then placed on 30-days paid administrative leave. He retained legal counsel and received several extensions of time to file his formal response to the charges.
 
 
 6
 The District hired private investigator Pate who interviewed McLaurin in the presence of his attorney and transcribed McLaurin's statements, Pate additionally examined all witnesses supplied by McLaurin and the complainants. Pate reported the results of his investigation to Ms. Jones.
 
 
 7
 McLaurin filed his written response on October 30, 1992, which included statements from thirteen character witnesses and a fourteen-page legal brief from his attorney. He denied sexually harassing the complainants and claimed that the District violated his due process rights. On November 5, 1992, Ms. Jones issued her findings and recommendations and notified McLaurin of his opportunity to appeal her decision to the Board.[3] Ms. Jones specifically found that a number of McLaurin's actions constituted sexual harassment.
 
 
 8
 On November 13, 1992, McLaurin appealed Jones' decision to the Board. Smith and Orozco, believing that McLaurin should not be allowed to remain at ARC, also appealed the Board's decision. The Board scheduled both appeals on the same evening, with McLaurin's appeal scheduled to be heard first. Neither side was permitted to present witness testimony, to be present during the other party's hearing, or to cross-examine witnesses. The Board upheld Jones' findings and recommendations, but additionally disciplined McLaurin by: (1) transferring him from ARC to Consumnes River College ("CRC") effective January 4, 1993; and (2) barring his reassignment to ARC while the complainants remained employed at ARC. McLaurin was afforded the right to raise new issues to the Board.
 
 
 9
 Effective January 4, 1993, McLaurin was transferred to CRC. Although he was not given administrative duties, McLaurin continued to receive the salary of an administrator. On January 14, 1993, McLaurin sought "formal administrative review" and attempted to raise five "new" issues, including alleged due process violations. On February 23, 1993, the Board informed McLaurin that it had previously decided the five issues and that he had failed to provide "any substantial information that would warrant reconsideration." Subsequently, in a letter dated March 11, 1993, the Board informed McLaurin that it. would hear several of the "new" issues, out not the due process issues. McLaurin, represented by new counsel, informed the Board that McLaurin would not pursue Board reconsideration. Instead, McLaurin demanded that he be afforded "a hearing before an impartial arbitrator mutually agreed upon by the parties" pursuant to Cal. Educ.Code §§ 87674, 87675. The District refused on the ground that the arbitrator provisions were inapplicable. Thereafter, McLaurin filed suit against the District for damages and declaratory relief under 42 U.S.C. §§ 1981, 1983. The district court granted summary judgment in favor of the District and McLaurin. timely appealed.
 
 NO PROPERTY INTEREST' IN HEARING PROCEDURES
 
 10
 McLaurin argues that he has a protected property interest in having the District discipline him according to the disciplinary hearing procedures set forth under Cal. Educ.Code §§ 72411.5, 87675.[4] McLaurin's argument, however, contains a misnomer. "The Fourteenth Amendment protects against the deprivation of property or liberty without due process." Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir.1988). Regardless of whether California law created an interest in having the District follow certain procedures, McLaurin has failed to allege a violation of a clearly established constitutional right, See Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 475 9th Cir.1991). In essence, McLaurin's property interest claim involves an attack on the quality and quantity of the disciplinary procedures chosen by the District. As explained more fully in part III, McLaurin received all of the process due him under the Constitution.
 
 APPELLANT RECEIVED DUE PROCESS
 
 11
 McLaurin contends that because he has a constitutionally protected liberty interest in his reputation, he is entitled to more than the minimal due process protections afforded by the District. Assuming without deciding that McLaurin has a constitutionally protected liberty interest, we nevertheless conclude that McLaurin received all of the process due him.
 
 
 12
 "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972). "To determine what process is constitutionally due, [the Supreme Court has] generally balanced three distinct factors:
 
 
 13
 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.
 
 
 14
 Gilbert v. Homar, 117 S.Ct. 1807, 1812 (1997) (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). In determining what process is due, the length and finality of the deprivation should be considered.
 
 
 15
 First, McLaurin's tenured faculty position was not affected by the District's discipline. Moreover, he continued to receive the salary of an administrator until the expiration of his contract. Thus, the private interests affected by the District's actions did not include termination or pay demotion. See Gilbert, 117 S.Ct. at 1812.[5]
 
 
 16
 Before the "pre-termination" hearing, McLaurin informally met with the District president on several occasions. Thereafter, McLaurin, was provided with a synopsis of the charges of the complaints and an overall description of affirmative action coordinator Jones' charges. An independent investigator examined all witnesses supplied by McLaurin and the complainants. McLaurin was given the opportunity to respond to the allegations personally and through representative counsel. He was also afforded several continuances. At the "post-termination" hearing level, he was afforded the right to raise "new" issues to the Board.[6] Finally, McLaurin had the opportunity to request a formal administrative review of alleged misinterpretations, violations, or misapplications of District rules and regulations. Although McLaurin requested Board reconsideration, he and his attorney decided not to pursue the matter.
 
 
 17
 These procedures afforded McLaurin an adequate name-clearing hearing and ensured against the erroneous deprivation of his rights. See id. The value of additional procedural safeguards under these circumstances was minimal. See id. Moreover, because state and federal law necessitated that the District take prompt and decisive action against sexual harassment, the government's interest was significant. See id.
 
 
 18
 The notice and hearing procedures given to McLaurin satisfied the Due Process Clause. See Board of Regents v. Roth, 408 U.S. § 64, § 7C n. 7 (1972). The District Court's grant of summary judgment in favor of the District was proper. See Simpson v. Lear Astronics Corp., 77 F 3.d 1170, 1176 (9th Cir.1996).[7]
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The defendants are hereinafter collectively referred to as "the District" unless the factual context requires reference to the individual defendants
 
 
 [2]
 Under McLaurin's administrative contract, the "administration retain[ed] the right to reassign personnel to such other titles, positions and duties within the employing institution." McLaurin's contract specified that the District could terminate the agreement "at any time for breach of contract, any ground emumerated in the Education Code, the Administrator's failure to perform his or her responsibilities as set forth in this Agreement, as defined by law, or as specified in the Administrator's job description." His contract further indicated that the determination of the Board was final and that McLaurin would not be entitled to an arbitration proceeding under Cal. Educ.Code § 87675
 
 
 [3]
 Jones recommended the following discipline: (1) effective November 10, 1992, McLaurin was to be reassigned from his duties as dean and given other duties. His administrative contract, however, was to remain in effect; (2) a letter of reprimand; (3) required attendance at a sexual harassment workshop before June 30, 1993; (4) a recommendation that the Board not extend McLaurin's administrative contract past its June 30, 1993, termination date, but that he keep his tenured faculty status
 
 
 [4]
 At the time McLaurin requested an arbitration proceeding, it was not entirely clear whether the California Code provided such a proceeding for administrators. Cal. Educ.Code § 72411.5 specified that "if the administrator has tenure as a faculty member, the dismissal of, and imposition of penalties for cause on, the administrator shall be in accordance with the provisions applicable to faculty members." Under Cal. Educ.Code § 87674, a faculty member could demand a hearing; the governing board and faculty member would then "agree upon an arbitrator to hear the matter.' Under Cal. Educ.Code § 87662, however, administrators were specifically exempted from the arbitration hearing procedures. In 1995, the California legislature amended the education code by clarifying that the faculty hearing procedures were not applicable to administrators employed under section 72411. See Cal. Educ Code § 87603 (Deering Supp.1997)
 
 
 [5]
 McLaurin's discipline consisted primarily of: (1) the Board's exercise of its right not to renew his management contract at the End of the term; (2) his transfer to a teaching position at CRC; (3) a letter of reprimand being placed in his personnel file; and (4) the blocking of any reassignment to ARC while the complainants continued to be employed at ARC
 
 
 [6]
 McLaurin's assertion that the "post-termination" procedures were constitutionally flawed based upon the Board's bias against him is unsupported by the record
 
 
 [7]
 Because we reject McLaurin's claims on the merits, we need not decide whether his claims are barred under the doctrine of: (1) qualified immunity; or (2) administrative estoppel. McLaurin's request for attorneys' fees on appeal is denied